```
___ FILED        ___ RECEIVED
___ ENTERED      ___ SERVED ON
                 COUNSEL/PARTIES OF RECORD

        DEC 2 9 2010

     CLERK US DISTRICT COURT
       DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JAMES LAUSTER, )
)
Plaintiff, )
) 3:10-cv-00305-RCJ-RAM
vs. )
)
GRAND SIERRA RESORT CORP. et al., ) **ORDER**
)
Defendants. )
_____ )

This case arises out of the alleged wrongful termination of an employee because of his age. Pending before the Court is Defendants' Motion to Partially Dismiss Amended Complaint (ECF No. 10). For the reasons given herein, the Court grants the motion.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff James Lauster worked for Defendant Worklife Financial of Nevada, LLC ("WFN") "as Vice President of Sales for [Defendant Grand Sierra Operating Corp. ("GSO")]." (*See* Am. Compl. ¶ 1). It is not clear from the Amended Complaint ("AC") whether Plaintiff means to allege that one of these entities is a subsidiary or alter ego of the other, or whether he means to allege that he worked for both companies and that they are unrelated entities. Defendant Richard Silverman is the President of GSO and an "employee" of Defendant Catalyst, LLC. (*Id.* ¶ 2).

WFN and/or GSO terminated Plaintiff, allegedly because of his age (fifty-seven at the time of his firing). (*See id.* ¶ 4). Plaintiff alleges that he was performing his job satisfactorily, and he anticipates that any reason Defendants give for his termination will be a pretext. (*See id.*

1  ¶¶ 5–6). Plaintiff's evidence of discriminatory intent is limited to a single comment from
2  Silverman to Plaintiff in an unspecified context that Plaintiff "belonged to the 'old school.'" (*Id.*
3  ¶ 4). Plaintiff also alleges that Silverman, GSO, and Catalyst tortiously interfered with Plaintiff's
4  contractual relationship with WFN by improper means, i.e., by discriminating against him based
5  on age, causing WFN to terminate the contractual relationship. (*See id.* ¶ 13).
6       Plaintiff sued WFN, GSO, Silverman, and Catalyst in state court. Defendants removed.
7  Plaintiff amended the Complaint in response to a previous motion to dismiss, which has since
8  been withdrawn. The AC lists two causes of action: (1) Age Discrimination in Employment Act
9  ("ADEA") against WFN; and (2) Interference against Silverman, GSO, and Catalyst. Defendants
10  have moved to dismiss the second cause of action for failure to state a claim.

11  **II.   RULE 12(b)(6) STANDARDS**

12       Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
13  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of
14  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47
15  (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action
16  that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule
17  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720
18  F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for
19  failure to state a claim, dismissal is appropriate only when the complaint does not give the
20  defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*
21  *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is
22  sufficient to state a claim, the court will take all material allegations as true and construe them in
23  the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th
24  Cir. 1986). The court, however, is not required to accept as true allegations that are merely
25  conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden*

1  *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action
2  with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation
3  is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly v.*
4  *Bell Atl. Corp.*, 550 U.S. 554, 555 (2007)).

5  "Generally, a district court may not consider any material beyond the pleadings in ruling
6  on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the
7  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*
8  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents
9  whose contents are alleged in a complaint and whose authenticity no party questions, but which
10 are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)
11 motion to dismiss" without converting the motion to dismiss into a motion for summary
12 judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule
13 of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*
14 *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court
15 considers materials outside of the pleadings, the motion to dismiss is converted into a motion for
16 summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir.
17 2001).

18 **III.  ANALYSIS**

19  **A.  At-Will Employment**

20  "Under Nevada law, the absence of a written contract gives rise to the presumption that
21 employment is at will." *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir. 1992) (citing
22 *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)). At-will employment can be
23 terminated without liability by either the employer or the employee at any time and for any
24 reason, *Martin v. Sears-Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995), with
25 limited exceptions based on "strong public policy," *see Hansen v. Harrah's*, 675 P.2d 394, 396

(Nev. 1984) (holding that an at-will employee can bring an action for retaliatory discharge when fired in retaliation for filing a worker's compensation claim).

Plaintiff alleges no written contract but only that he had "an existing and a prospective contractual and/or economic relationship." (Am. Compl. ¶ 12). As Plaintiff has not specifically alleged a written contract, for the purposes of the present motion the presumption of at-will employment applies. Plaintiff, however, has sufficiently pled the existence of prospective and continuing economic relations with his employer.

### B. Tortious Interference by Third Parties

"To establish intentional interference with contractual relations, the plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989). In the absence of a contract, a plaintiff may still establish the tort of intentional interference with prospective economic advantage by showing: "(1) a prospective contractual relationship between the plaintiff and a third party; (2) knowledge by the defendant of the prospective relationship; (3) intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff . . . ." *Wichinsky v. Mosa*, 847 P.2d 727, 729–30 (Nev. 1993) (citing *Leavitt v. Leisure Sports, Inc.*, 734 P.2d 1221, 1225 (Nev. 1987)).

Defendants cite to a U.S. District Court decision for the proposition that a third party cannot tortiously interfere with an at-will employee relationship as a matter of law. *See Alam v. Reno Hilton Corp.*, 819 F. Supp. 905, 911 (D. Nev. 1993) (Reed, J.) (citing *Hicks v. Clyde Fed. Sav. & Loan*, 696 F. Supp. 387, 389 (N.D. Ill. 1988)) ("An at-will employee relationship is not a contract with which a third party can interfere."). Although Defendant concedes that *Alam* is only persuasive and that the Nevada Supreme Court has not addressed the issue, the Second

Judicial District Court in Washoe County quoted the above language from *Alam* with approval in March of this year. *See B-Jensen v. Int'l Game Tech., Inc.*, No. CV08-02762, 2010 WL 2258884 (Nev. Dist. Ct. Mar. 29, 2010) (Berry, J.). The Utah Court of Appeals has also ruled that no cause of action for tortious interference lies by an at-will employee. *See Zoumadakis v. Uintah Basin Med. Ctr., Inc.*, 122 P.3d 891, 894 ¶ 9 (Utah Ct. App. 2005).

But this is the minority opinion. In California, an employer may bring a claim against another employer for tortious interference with an at-will employment relationship. *See Reeves v. Hanlon*, 17 Cal. Rptr. 3d 289, 298 (2004) (holding that such a claim may be brought under the standards applicable to a claim for intentional interference with prospective economic advantage: an employer must claim and show that the defendant engaged in an independently wrongful act—i.e., an act proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard—that induced an at-will employee to leave the plaintiff). An employee can also bring such a claim based on a wrongful act by a third party that causes an employer to terminate him or to cease future relations with him. *See Savage v. Pac. Gas & Elec. Co.*, 26 Cal. Rptr. 2d 305, 314 (Ct. App. 1993). In Arizona, as well, a third party can be liable for tortious interference with an at-will employment contract where the employee is fired for "bad cause," as opposed to good cause or no cause. *See Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1041 (Ariz. 1985) ("[T]he unjustified interference of third persons is actionable although the employment is at will." (quoting *Truax v. Raich*, 239 U.S. 33, 38 (1915) (Arizona law))). The *Wagenseller* Court also noted that the Restatement has long recognized liability for interference with at-will contracts. *See id.* (citing Restatement (First) of Torts § 766 cmt. c (1939)). Since *Wagenseller*, Arizona has adopted a statute providing that an action against an *employer* for wrongful termination lies only where there is a written employment contract, the termination was in violation of a state statute, or under certain other circumstances. *See* Ariz. Rev. Stat. § 23-1501. The statute does not on its face prevent suits against *third parties* under the

standards of *Wagenseller*, and a judge of the U.S. District Court for the District of Arizona has assumed, without deciding, that *Wagenseller* remains good law in this context. *See Tempesta v. Motorola, Inc.*, 92 F. Supp. 2d 973, 987 (D. Ariz. 1999) (finding that an employee had no case against a coworker under *Wagenseller*, but only because he failed to show causation or that he was fired for reasons against public policy). The Idaho Supreme Court has also assumed, without deciding, that an at-will employee has a cause of action against third parties for tortious interference. *See Jenkins v. Boise Cascade Corp.*, 108 P.3d 380, 390 (2005) (holding that such a claim only lies against a supervisor when acting outside the scope of his duties for the employer, otherwise the supervisor is not a "third party"). In Oregon also, a third party may be held liable for tortious interference with an at-will employment relationship. *See Lewis v. Or. Beauty Supply Co.*, 733 P.2d 430, 433 (Or. 1987). However, in Oregon, as elsewhere, the employer itself cannot be held liable on an interference theory. *See Jenkins*, 108 P.3d at 390; *Lewis*, 733 P.2d at 436.

### C. The "Strong Public Policy" Exception

An employer may be liable for tortious discharge in Nevada in the context of an at-will employment relationship where it terminates an employee in a way repugnant to the strong public policy of the state, *Hansen*, 675 P.2d at 396, and the weight of authority from sister jurisdictions indicates that third parties can be liable for tortious interference with at-will employment relationships where their actions are wrongful, i.e., where they interfere in a way repugnant to the law or strong public policy, *see Wagenseller*, 710 P.2d at 1041 (Arizona); *Reeves*, 17 Cal. Rptr. 3d at 298 (California); *Jenkins*, 108 P.3d at 390 (Idaho); *Lewis*, 733 P.2d at 433 (Oregon). *But see Zoumadakis*, 122 P.3d at 894 ¶ 9 (Utah). The contrary position from *Alam*, cited by Defendants, is no longer as persuasive as it once was. The *Alam* court relied on a district court opinion from the Northern District of Illinois, which in turn relied on Illinois law as it existed in 1988. *See Alam*, 819 F. Supp. at 911 (citing *Hicks*, 696 F. Supp. at 389). Illinois courts today

recognize that although an at-will employee cannot sue a third party for tortious interference with contractual relations, he may sue such a party for tortious interference with prospective economic advantage "because [an at-will employment] relationship 'will presumptively continue in effect so long as the parties are satisfied.'" *The Film & Tape Works, Inc. v. Junetwenty Films, Inc.*, 856 N.E.2d 612, 619 (Ill. App. Ct. 2006) (citing *Dowd & Dowd, Ltd. v. Gleason*, 816 N.E.2d 754, 768 (Ill. App. Ct. 2004); Restatement (Second) of Torts § 766 cmt. g, at 10–11). In *Gleason*, the Appellate Court of Illinois noted, "Until terminated, the relationship created by a contract terminable at will is subsisting and will presumptively continue in effect so long as the parties are satisfied. Such a relationship is sufficient to support an action for tortious interference." 816 N.E.2d at 768 (citation omitted).

Furthermore, the *Hicks* court—the decision of which influenced the *Alam* court—appears to have wrongly assessed the law of Illinois even in 1988. As the *Gleason* court noted in 2004, as early as 1982 the Illinois courts had recognized that a third party could be liable for interfering with an at-will employment relationship. *See id.* (citing *Kemper v. Worcester*, 435 N.E.2d 827 (Ill. App. Ct. 1982)). The *Kemper* Court had reversed a trial court's grant of judgment on the pleadings where "the employment agreement between plaintiff and the bank, albeit terminable at will, constituted a sufficient relationship or agreement upon which to base a cause of action for tortious interference with advantageous or contractual relations." *Id.* at 831. In summary, an at-will employee may sue a third party who interferes with his employment relationship, because that person has tortiously interfered with his prospective economic advantage. However, the nature of the interference must implicate the "strong public policy" of the state.

### D. Public Policy Against Age Discrimination in Nevada

The Legislature has explicitly adopted a public policy against age discrimination in employment. Nev. Rev. Stat. § 233.010(1) ("It is hereby declared to be the public policy of the State of Nevada . . . to foster the right of all persons reasonably to seek, obtain and hold

employment and housing accommodations without discrimination, distinction or restriction because of race, religious creed, color, age, sex, disability, national origin or ancestry."). Nevada's anti-discrimination statute was adopted the year after Congress passed the Civil Rights Act of 1964. *See* 1965 Nev. Stat. 691. Age was added as a protected category in 1973, *see* 1973 Nev. Stat. 981, a decade before hearing disability, *see* 1981 Nev. Stat. 1920, two decades before general disability, *see* 1991 Nev. Stat. 1024, and three decades before sexual orientation, *see* 1999 Nev. Stat. 1938. A judge of this District noted in 1985 that the Legislature had adopted a public policy against age discrimination and anticipated that the Nevada Supreme Court would find that age discrimination in employment was against the strong public policy of the state:

> The third claim for relief is based on breach of express and implied employment contract. The defendants point out that the plaintiff's employment was "at-will", and the "at-will" rule is that either employer or employee may terminate with or without reason and without legal liability therefor. However, there is a "strong public policy" exception to this rule. *See Hansen v. Harrah's*, [675 P.2d 394, 396 (Nev. 1984)]. Here the plaintiff's position is that his firing was motivated by his employer's discriminatory bias against older employees. When a state's legislature has enacted legislation that forbids certain conduct, that conduct is against public policy. *Lucas v. Brown & Root, Inc.*, 736 F.2d 1202, 1205 (8th Cir. 1984); *Tameny v. Atlantic Richfield Co.*, [610 P.2d 1330, 1332 (Cal. 1980)]. NRS 233.010(1) specifically declares that it is the public policy of the State of Nevada to foster the right of all persons to hold employment without discrimination because of age. Further, NRS 613.330(1) makes it an unlawful employment practice for an employer to discharge any person because of his age. It seems safe to conclude that Nevada has a strong public policy against age discrimination in employment. In light of the *Hansen v. Harrah's* opinion, this Court predicts that the Nevada Supreme Court, if and when it faces the question, will recognize that age discrimination fits into the public policy exception to the "at-will" employment doctrine.

*Wolber v. Serv. Corp. Int'l*, 612 F. Supp. 235, 237–38 (D. Nev. 1985) (Reed, J.).

However, the Nevada Supreme Court held in 1989 that "age discrimination does not fit into the public policy exception to the 'at-will' employment doctrine," and that settles the question in this Court. *Sands Regent v. Valgardson*, 777 P.2d 898, 899 (Nev. 1989). "Clearly, Nevada has a public policy against age discrimination. Nevertheless, we do not perceive that our public policy against age discrimination is sufficiently strong and compelling to warrant another

Page 8 of 9

exception to the 'at-will' employment doctrine." *Id.* (footnote omitted). The Court therefore grants the motion to dismiss the second cause of action.

The Court also grants the motion as against GSO for the additional reason that as Plaintiff's employer it cannot be held liable for interfering with its own relationship with Plaintiff. *See Jenkins*, 108 P.3d at 390; *Lewis*, 733 P.2d at 436. In response, Plaintiff notes that a judge of this District has refused to dismiss such a claim where the allegations in the complaint made it *possible* that a defendant was acting outside of the scope of his agency for the employer. *See George v. Morten*, No. 2:06-CV-1112-PMP-GWF, 2007 U.S. Dist. LEXIS 15980, at *22–24 (D. Nev. Mar. 1, 2007) (Pro, J.). But the *Morten* court applied the *Conley* "no set of facts" dismissal standard, not the "plausible versus possible" standard of *Twombly* and *Iqbal* that applies today. *See id.* at *16–18. Here, the only facts alleged are that Defendants discriminated against Plaintiff (in an unspecified way). This implies that they were acting as agents of the employer, because the gravamen of the action is wrongful termination based on age discrimination. Plaintiff alleges no facts concerning how any Defendant wrongfully influenced WFN in a private capacity to terminate Plaintiff, or how this caused his termination. Because amendment is futile in light of *Valgardson*, the Court will not grant leave to amend.

## CONCLUSION

IT IS HEREBY ORDERED the Motion to Partially Dismiss Amended Complaint (ECF No. 10) is GRANTED.

IT IS SO ORDERED.

Dated: December 29, 2010

_____
ROBERT C. JONES
United States District Judge